**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

VALERIE DARLENE JACKSON,

          CASE NO. 1:16-cv-14404

       *Plaintiff*,          MAGISTRATE JUDGE PATRICIA T. MORRIS

*v.*

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant.*

_____/

## MAGISTRATE JUDGE'S OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 15, 20)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Jackson is not disabled. Accordingly, **IT IS RECOMMENDED** that Jackson's Motion for Summary Judgment, (Doc. 15), be **DENIED**, the Commissioner's Motion, (Doc. 20), be **GRANTED**, and this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

This is an action for judicial review of a final decision by the Commissioner of Social Security denying Plaintiff Valerie Darlene Jackson's ("Jackson") claims for disability benefits under the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income Benefits ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq.* (Doc. 1). The case is before the undersigned magistrate

1

judge pursuant to the parties' consent under 28 U.S.C. § 636(c), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference. (Docs. 14, 16). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 20).

On December 2, 2013, Jackson filed an application for DIB alleging a disability onset date of January 1, 1980. (Tr. 152-58). She followed this with an application for SSI on December 21, 2013, alleging the same disability onset date. (Tr. 159-67). The Commissioner denied her claims. (Tr. 51, 65). Jackson then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on May 12, 2015, before ALJ Frederick McGrath. (Tr. 36-50). At the hearing, she amended her alleged onset date to June 1, 2014. (Tr. 38). The ALJ's written decision, issued June 5, 2013, found Jackson not disabled. (Tr. 20-35). On October 27, 2016, the Appeals Council denied review, (Tr. 1-6), and Jackson filed for judicial review of that final decision on December 19, 2016. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we condiser our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ found Jackson not disabled. (Tr. 23-31). At Step One, the ALJ found that Jackson last met the insured status requirements of the Social Security Act on December 31, 2017, and had not engaged in substantial gainful activity in the interval between her alleged onset date of June 1, 2014 and her date last insured. (Tr. 25). At Step Two, the ALJ concluded that the following impairments qualified as severe: degenerative disc disease and arthritis of L5, chronic edema of the legs and chronic obstructive pulmonary disease, and obesity. (Tr. 25). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 26). Thereafter, the ALJ found that Jackson had the residual functional capacity ("RFC") to perform light work except

the claimant should never climb ladders, ropes, and scaffolds. This claimant is precluded from work around unprotected heights and dangerous machinery. In addition, this claimant should not engage in repetitive stooping and squatting. Further, this claimant should avoid concentrated exposure to fumes, odors, dust, gas, and chemicals.

(Tr. 26). At Step Four, the ALJ found Jackson incapable of performing her past relevant work. (Tr. 29). Proceeding to Step Five, the ALJ determined that jobs existed in significant numbers in the national economy that Jackson could perform. (Tr. 29-31).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has reviewed Jackson's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Application Reports and Administrative Hearing

##### i.    Function Report

On January 27, 2014, Jackson filled out a Function Report. (Tr. 289-96). She described her condition as "[s]evere hip, knee and back pain, not allowing me to work, stand[] or sit over 5 [hours] per shift. Calling off frequently due to pain, if or when working more than 2 days at a time. Not being able to work fast or keep up with the rest of the crew members, limiting my assignments to accommodate my pain (hip, knees and back). [A]lso not being able to be around fumes, dust or anything that will flare up my asthma/COPD." (Tr. 289). She added that flare-ups occurred "frequently" due to climbing stairs, pushing carts, lifting more than ten pounds, chemicals, running, or walking fast. (*Id.*). On occasion, her knees would also "give out causing me to fall sometime up or downstairs." (*Id.*). "The

pain [is] so severe I cry or can't sleep, toss and turn in my sleep causing me to lose rest . . . ." (Tr. 290). These issues interfered with her ability to dress, bathe, care for her hair, use the toilet, or use "soaps, deodorants, perfumes, shower gels," and other similar products. (*Id.*). She prepared "[q]uick meals" because she could not stand for long, and "mostly use[d] [a] slow cooker for meals so I won't stand over the stove long." (Tr. 291). She cooked "every 3rd day," and it took her "up to 2 [hours]" to do so. (*Id.*).

Her conditions also interrupted her ability to do chores. She would "[c]lean in spurts" but "get tired fast . . . ." (*Id.*). General tidying, laundry and dish washing often took more than an hour, and sometimes up to three hours. (*Id.*). Her brothers helped her accomplish these tasks. (*Id.*). She could not lift "over 10 [pounds]" because it would "hurt my hips, knees, and back, . . ." (*Id.*). Leaving also proved difficult, and thus she left home "only to work and grocery shop." (Tr. 292). She would either walk, ride along in a car, or use public transportation; she did not own a driver's license. (*Id.*). She shopped once a month for "[g]roceries, toiletries, [and] health [and] beauty aids." (*Id.*). She retained the capacity to pay bills, count change, handle a savings account, and use a checkbook/money orders. (*Id.*).

Cooking used to be a hobby, but because it was difficult for her to do at the time of writing, she limited her activities to online games and "watching true stories" on a daily basis. (Tr. 293). She also spoke with others "every day on the phone." (*Id.*). She sometimes took someone with her to the grocery store "to help [with] my bags depending on how many I have and how much pain I'm in." (*Id.*). She did not engage in "social activity," however, because her "hips won't let me do extra things . . . ." (Tr. 294). Prompted to mark

abilities with which she encountered difficulty, she marked: lifting squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks. (*Id.*). She could walk up to a block before needing to stop "until I get my breath, or until the pain stop [sic] shooting through my hips." (*Id.*). Nor did she handle stress well, because "depression sets in sometime[s]," and "I get discouraged at that point." (Tr. 295).

Closing the form, she wrote "I have no medical insurance or money to pay to see a [doctor]. So basic[al]ly I take the pain and use pain patches given to me by friends. . . . My asthma meds are given to me through the E.R." (Tr. 296).

### ii. Jackson's Testimony at the Administrative Hearing

At the outset, Jackson's counsel clarified that she was amending her onset date to June 1st, 2014, and noted that she was fired from her "janitorial work" due to an inability "to do the physical demands." (Tr. 38). Counsel then questioned Jackson as to the specific physical problems interfering with her work. (Tr. 39). She summarized the issue as affecting "[w]alking, bending and handling the chemicals, which caused my asthma attacks, sitting for long periods of time, swelling, back pain, all that with my limitations." (Tr. 40). She noted that she was prescribed a cane by a doctor, and had used it "for seven months" preceding the hearing. (*Id.*). She suffered "chronic edema" in both legs, which caused daily issues and required leg elevation. (*Id.*). She elevated her feet for two to three hours each day. (Tr. 40-41). "[B]ecause of the back pain, I can't exercise, and the overexertion usually flares my asthma up, so that limits me to my exercising." (Tr. 41). She treated her asthma with a nebulizer "every six hours per day." (*Id.*). Still, she endured frequent shortness of breath. (Tr. 42).

In November 2014, her radiculopathy led her to the emergency room in Michigan. (Tr. 42-43). At the time, she was homeless and living in Georgia. "I sleep wherever I can. Relatives, sometime[s] I sleep on the subway, I just ride the bus. My brother was letting me stay with him for about six months, I guess, and that resource exhausted. I stayed with a cousin for about three months, and that resource exhausted." (Tr. 43). Asked about what she needed and could not get medically, she listed "meds I'm not receiving, my asthma medicine, my COPD medicine and my pain management meds. I was requested to have [an] MRI done on my shoulder and I'm not able to get that done because of I don't have medical. Physical therapy is suggested, and I'm not able to do that, because of no medical insurance." (Tr. 44). She predicted an ability to lift more than ten pounds once a day, but not more than that. (*Id.*). Flare-ups in her hands sometimes occurred as frequently as twice a week and could last for an entire day. (*Id.*). To avoid swelling in her legs, she alternated between sitting and standing. (Tr. 45). If a job required her to stand longer than two hours out of an eight-hour day, she would "call in sick or leave early" about "half the month, . . ." (*Id.*).

### iii.  The VE's Testimony at the Administrative Hearing

In his first and only hypothetical, the ALJ asked the VE to assume an individual "limited to light, unskilled work. No climbing ladders, ropes, and scaffolds, no work around unprotected heights or dangerous machinery. No repetitive stooping and squatting requirements, avoid concentrated exposure to fumes, odors, dust, gases, and chemicals. Based on those limitations and those limitations alone, would there be any jobs in existence for such a limited individual?" (Tr. 47-48). The VE indicated that jobs existed in the

national economy for such a person, including: "office helper"—with 1,600 regional job availabilities and 74,000 national job availabilities—"ticket seller"—with 943 regional job availabilities and 32,287 national job availabilities—and "photocopying machine operator"—with 796 regional job availabilities and 38,000 national job availabilities. (Tr. 48).

## F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner,

such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or

equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

13

> (v)     Treatment, other than medication, . . . received for relief of . . . pain;
>
> (vi)     Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.     Analysis

Jackson furnishes two general arguments for remand in the instant Motion: (1) the ALJ improperly evaluated the medical sources of record, (Doc. 15 at ID 555-61), and (2) the ALJ's credibility analysis is fatally flawed, (Doc. 15 at ID 562-65). I address each argument in turn.

### 1.     The Weight Accorded Medical Sources

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.927(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating* source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

In the instant case, Jackson divides her challenge into three parts: (i) Dr. Hussain was a treating source entitled to more weight than he received, (Doc. 15 at ID 556-59); (ii) Dr. Shelby-Lane should have received less weight than Dr. Hussain, (Doc. 15 at ID 559-60); and (iii) the ALJ failed to indicate consideration of the state agency medical consultant opinions on record, (Doc. 15 at ID 561).

### i.    Dr. Hussain

Jackson first contends that the ALJ failed to properly consider Dr. Hussain's opinion, which, if given more weight, would have resulted in a finding of disability because Jackson "would have gridded out . . . under the Medical-Vocational Guidelines." (Doc. 15 at ID 558). The opinion deserved more weight, she suggests, because Dr. Hussain was a treating physician and objective evidence in the record validated his conclusions. (Doc. 15 at ID 558).

At the outset, I note that the ALJ proved overly generous in regarding Dr. Hussain's opinion as that of a treating source, as Jackson visited him only once. (Tr. 464-66). "A single examination does not suffice to create a treating relationship." *Luteyn v. Comm'r of Soc. Sec.*, 528 F.Supp.2d 739, 743 (W.D. Mich. 2007) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F App'x. 496, 506 (6th Cir. 2006) ("A plethora of decisions unanimously hold that a single visit does not constitute a treating relationship.")). And in any case, the ALJ provided 'good reasons' to discredit the opinion, observing that Dr. Hussain appeared to rely on Jackson's subjective symptoms, and not on clinical findings. (Tr. 29); (Tr. 464-65) (highlighting almost no abnormalities in the physical exam, aside from tenderness to palpation). Indeed, because Dr. Hussain's medical source statement is in check-box format, it is an impotent addition to the record with little to no persuasive value—to hold otherwise would neglect its glaring lack of narrative analysis. *See, e.g.*, *Ellars v. Comm'r of Soc. Sec.*, No. 15-4039, 2016 WL 2610234 at *2 (6th Cir. 2016) ("[T]he administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical

evidence.”); *see also Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (“Even if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error because the [medical source statement] here is ‘weak evidence at best’ and meets our patently deficient standard.”); *accord Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (“Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.”). The fact that certain evidence consistent with Dr. Hussain's findings exists in the record remains immaterial, because the ALJ provided ‘good reasons’ for discounting his opinion and this Court may not reweigh the evidence. *E.g.*, *Albanna v. Comm'r of Soc. Sec.*, No. 15-CV-14264, 2016 WL 7238925, at *12 (E.D. Mich. Nov. 22, 2016), *report and recommendation adopted,* No. 15-14264, 2016 WL 7210715 (E.D. Mich. Dec. 13, 2016) (“Arguments which in actuality require ‘re-weigh[ing] record evidence’ beseech district courts to perform a forbidden ritual.” (quoting *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014))).

In other words, the reasons supplied in the ALJ's review certainly find support in the record and communicate with sufficient clarity the weight given his opinion, as well as the reasons for that weight.

### ii.    Dr. Shelby-Lane

Jackson next attacks the ALJ's handling of Dr. Shelby-Lane's opinion. She contends that “other evidence in the record suggests greater limitations,” including a CT scan from February 2014. (Doc. 15 at ID 560). This argument proves unavailing. The ALJ did not discuss Dr. Shelby-Lane's opinion in extreme detail, but he discussed results from her

examination, (Tr. 26-27), and specified that great weight was to be accorded her opinion in light of its "consisten[cy] with the evidence of record," (Tr. 29). Throughout the decision, he discussed the objective evidence at length, including much of the evidence post-dating Dr. Shelby-Lane's consultative examination. (Tr. 26-29) (referring repeatedly to exhibits 9F, 10F, and 11F). He also explicitly mentions and discusses the February 2014 CT scan Jackson refers to in her motion. (Tr. 27) ("Imaging of the claimant's lumbar spine dated February 5, 2014 revealed degenerative changes, greatest at L4-L5 and L5-S1." (citing (Tr. 429))). Accordingly, the ALJ made no error in assigning Dr. Shelby-Lane's opinion great weight, and remand is unwarranted on this ground. *Cf. Kornecky*, 167 F. App'x at 507 (finding "no reason to depart from the usual harmless-error rule" where an ALJ "failed to explain why he favored several examining physicians' opinions over another's").

### iii.        State Agency Medical Consultant Opinions

Jackson also urges remand on the ground that "the ALJ does not mention" opinions from the State Agency Medical Consultants, Dr. Blake and Dr. Mahmood. (Doc. 15 at ID 561) (referring to (Tr. 52-64, 66-78)). She summarizes these opinions as limiting her to "light work, with the limitation that she should avoid exposure to fumes, odors, dusts, and gases." (*Id.*). Although she concedes that "[t]he ALJ added [these] limitations based on other medical evidence," she maintains that "he never discussed what weight he gave to these opinions, so it is not possible to determine if he found [Jackson] limited to light work based on his own examination of the record or the [state agency] opinions." (*Id.*). This concession undermines her argument, as it admits that the ALJ's error—assuming one

18

exists—worked no harm upon her case. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'"); *cf., e.g.*, *Murphy v. Comm'r of Soc. Sec.*, No. CIV.A. 13-11795, 2014 WL 2558685, at *8 (E.D. Mich. Apr. 30, 2014), *report and recommendation adopted,* No. 13-11795, 2014 WL 2558686 (E.D. Mich. June 6, 2014) ("While the ALJ should have discussed Dr. Douglass' opinion, the Court finds his failure to explicitly explain the weight given to this opinion was harmless error, as the ALJ's RFC assessment clearly is consistent with Dr. Douglass' opinion."). As such, the Court should not remand on this ground, as any error in failing to mention the state agency opinions was harmless.

### 2.    Credibility

Jackson next posits that the ALJ did not properly engage in the two-pronged test for gauging a claimant's evaluation of pain. (Doc. 15 at ID 562-65). She suggests the ALJ discredited her testimony for two invalid reasons: (i) her activities of daily living could not be objectively verified, and (ii) she failed to visit a "free or subsidized clinic." (Doc. 15 at ID 562). In her view, the ALJ failed to supply adequate evidentiary discussion to enable review of his former reasoning, (Doc. 15 at ID 563-64), and when coupled with his further failure "to consider her poverty in connection with treatment options," (Doc. 15 at ID 565), these errors demand remand.  Neither contention has any merit.

Jackson is correct that an ALJ must not disregard "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the

symptoms have on his or her ability to work . . . solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). That is not, however, the only reason the ALJ provided. The ALJ also mentioned Jackson's lack of compliance "in taking prescribed medications," a record full of "routine and/or conservative" treatment without "surgical intervention or even a referral to a specialist," and a failure to "exhaust all efforts to seek treatment, . . ." (Tr. 28). Although he did not include cohesive discussion of the contrary objective evidence at this juncture, he did so elsewhere. (Tr. 26-27). The record validates the ALJ's findings. (Tr. 346, 348, 351, 368, 372, 388-89, 404-07, 416, 420-22, 427-31, 434-35, 461-63, 484-86) (mild objective findings); (Tr. 359, 394-95, 398, 408-10, 443-45, 456, 465-66) (conservative treatment record).

As noted, Jackson also takes issue with weighing her failure to seek medical attention whatsoever in light of her poverty. Indeed, "a failure to seek examination or treatment may say little about a claimant's truthfulness" in some instances, such as when that failure can be traced or attributed to a mental impairment. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation. . . . [T]his should not be a determinative factor in a credibility assessment."). However, "[t]he issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition." *Strong*, 88 F. App'x at 846 (citing *McKnight v. Sullivan*, 927 F.2d

241, 242 (6th Cir. 1990)). In *Strong*, the Sixth Circuit confirmed that a failure to seek treatment may rightly reflect poorly on a claimant's credibility:

> [T]o the extent that the ALJ may have considered the absence of contemporaneous evidence in evaluating Claimant's credibility as to his allegedly disabling pain, this was not improper. In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.

*Id.* As such, the ALJ's consideration of that factor here does not warrant a finding of any error that would require remand.

Put simply, the ALJ supplied a cohesive rationale for his adverse credibility determination, buttressed by substantial evidence, and this Court should not disturb it. *See generally Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997))).

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Jackson's Motion for Summary Judgment, (Doc. 15), be **DENIED**, the Commissioner's Motion, (Doc. 20), be **GRANTED**, and this case be **AFFIRMED**.

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and

file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 19, 2017

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

22

## <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: October 19, 2017                    By s/Kristen Castaneda
                                          Case Manager